UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS (BOSTON)

| | |
|---|---|
| IN RE:<br><br>Lawrence C. Ray, II | |
| Santander Bank, N.A. formerly known as Sovereign Bank, N.A. successor by merger to The Compass Bank for Savings,<br><br>VS.<br><br>Lawrence C. Ray, II | CHAPTER 13<br>CASE NO. 16-14382-MSH |

**OBJECTION TO DEBTOR'S MOTION TO FILE LATE OBJECTION TO SANTANDER BANK N.A.'S PROOF OF CLAIM [Docket 61]**

Now comes Santander Bank, N.A. formerly known as Sovereign Bank, N.A. successor by merger to The Compass Bank for Savings (hereinafter "Santander") and files its Objection to Debtor's Motion to File Late Objection to Santander Bank, N.A.'s Proof of Claim. In support of its Response, Santander states as follows:

1. Santander respectfully requests that Debtor's Motion (Docket 61) be denied.
2. Santander admits the allegations set forth in Paragraph 2.
3. Satander denies the allegations set forth in Paragraph 3. On Decmeber 22, 2016, Debtor filed his Response to Santander's Objection to Plan (Docket 24) and on March 16, 2017 Debtor filed his Motion for Accounting (Docket 32) and said motion was denied after a hearing on the merits on April 27, 2017. The evidentiary hearing scheuled for July 27, 2017 is for Satnander's Objection to Plan (Docket 21), not for Debtor's Motion for Accounting.
4. Santander admits the assertion set forth in Paragraph 4 in that Local Rule 13-13(g)

provides the Court with discretion to allow the late filing of an objection so long as good cause is shown.

5. Santander denies the allegations set forth in Paragraph 5. Pursuant to Rule 3001(f) a validly filed proof "shall constitute prima facie evidence of the validity and amount of the claim". Santander maintains its Proof of Claim (Claim 2-1) is valid and correct as filed. Despite repeated requests, Santander has not received any proof beyond mere suggestion that its figures are incorrect.

IN FURTHER RESPONSE TO THE MOTION FILED, Santander further states:

1. Debtor's Motion to File a Late Objection fails to to meet the standard of Local Rule 13-13(g) as it fails to provide any basis for "good cause". While the local rules do not define what constitutes good cause, "courts must determine whether good cause has been shown on a case by case basis". In re Waldner, 183 B.R. 879, 882 (B.A.P. 9th Cir. 1995), citing In re Reeves, 127 B.R. 866, 868 (S.D.Cal.1991). Debtor's motion states with no specifity what grounds it has to challenge Santander's claim and provides no justification for its late filing. The deadline to file an objection was on April 20, 2017. Debtor's motion also fails to demonstrate any liklihood that there is "substantial evidence" that he could prevail on such objection. Further, the allegations of improper accounting should have been raised in prior bankruptcy proceedings. Moreover, in Debort's Response to Santander's Ojbection to Plan (Docket 24), Debtor "asserts that Santander Bank has received funds prepetition and that were held in escrow/suspense and not being applied. The Debtor shall provide proof of payments forthwith". Such evidence has never been presented depsite repeated requests.

2. The Doctrine of Res Judicata prevents Debtor from now objecting to this claim related to any accounting prior to Debtor's 2014 bankruptcy case. Debtor has two prior Chapter 13 cases, Case Nos. 10-20966 and 14-11238. In neither case did Debtor object to the Proof of Claim. Further, in Case 14-11238 Debtor challenged the accounting in a later motion and that matter was adjudicated. More recently, on November 8, 2016, Debtor filed a complaint with Plymouth Superior Court along with a motion for preliminary injunction. (See Case 1683CV01072 Ray, II, Lawrence C. vs. Santander Bank, N.A.) In this instance, the Debtor again argued there was an issue with the accounting, specificially with regard to an October 2011 payment of $35,999.84. On November 17, 2016 the Court denied Debtor's motion for injunction, citing "Plaintiff has not shown that he has a likelihood of success on the merits" (Attached hereto as **Exhibit A**). On December 15, 2016, Debtor filed this present bankruptcy case. To allow this motion would only enable Debtor to continue to retry matters before this Court without ever having to provide any merit to the allegations he sets forth.

3. If Debtor is to object to Santander's claim, it must be limited in scope. In Case 14-11238, Santander filed its Proof of Claim on May 22, 2014, Claim No. 3-1 (Attached hereto as **Exhibit B**). As previously stated, this claim was never objected to and Debtor's plan was confirmed on September 3, 2014. Any objection the Debtor may raise with regard to Santander's pre-petition accounting, can only encompass the period between May 22, 2014, when the previous claim was filed, to Decmeber 15, 2016, the filing of the instant case. Any period prior to May 22, 2014, including the October 2011 payment of $35,999.84, can no longer be advanced as an

issue by the Debtor as both have been fully adjudicated.

4. Even with the limited scope of a potential objection, Debtor is unable to prevail. Debtor provides no evidence in the two years since an accountant was allegedly retained that there is an error with the accounting. Nothing contained within Debtor's motion to allow the late filing or the objection itself demonstrates good cause to allow such a delayed objection. Finally, there is nothing within the objection itself that could give rise to "substantial evidence" that Debtor could prevail.

WHEREFORE, Santander respectfully requests that Debtor's Motion to File Late Objection to Santander Bank, N.A.'s Proof of Claim be denied as Debtor fails to meet the burden of providing good cause, and further relief as may be just and proper.

Respectfully submitted,

Santander Bank, N.A. formerly known as Sovereign Bank, N.A. successor by merger to The Compass Bank for Savings,
By its Attorney

/s/Joshua Ryan-Polczinski
Joshua Ryan- Polczinski, Esquire
BBO# 678007
Harmon Law Offices, P.C.
150 California Street
Newton MA 02458
(617) 558-0500
mabk@harmonlaw.com

Dated May 24, 2017

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>Lawrence C. Ray, II | CHAPTER 13<br>CASE NO. 16-14382-MSH |

CERTIFICATE OF SERVICE

I, Joshua Ryan-Polczinski, Esquire , state that on May 24, 2017, I electronically filed the foregoing document on behalf of Santander Bank, N.A. formerly known as Sovereign Bank, N.A. formerly known as Sovereign Bank successor by merger to The Compass Bank for Savings with the United States Bankruptcy Court for the District of Massachusetts using the CM/ECF System. I served the foregoing document on the following CM/ECF participants:

John Fitzgerald, Assistant U.S. Trustee
Carolyn Bankowski, Esquire, Chapter 13 Trustee
Richard D. Smeloff, Esquire for the Debtor

I certify that I have mailed by first class mail, postage prepaid the documents electronically filed with the Court on the following non CM/ECF participants:

/s/Joshua Ryan-Polczinski
Joshua Ryan-Polczinski, Esquire
BBO# 678007
Harmon Law Offices, P.C.
150 California Street
Newton MA 02458
617-558-0500
mabk@harmonlaw.com

Lawrence C. Ray, II
PO Box 813
Marshfield, MA 02050-0813

Lawrence C. Ray, II
95 Flames Rd.
Marshfield, MA 02050-0813

# Exhibit A

**Please Note:**
**The Documents Appended Hereto Have Been Redacted**
**To Prevent Any Possible Disclosure of Personal And Private Information**

**Any Documents Marked As A True And Correct Copy**
**Have Also Been Redacted For This Purpose**

| CLERK'S NOTICE | DOCKET NUMBER<br>1683CV01072 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| CASE NAME:<br>Lawrence C Ray, II vs. Santander Bank, N.A. | | Robert S. Creedon, Jr., Clerk of Courts |
| TO:<br>Kurt McHugh, Esq.<br>Harmon Law Offices, PC<br>150 California Street<br>Newton, MA 02458 | | COURT NAME & ADDRESS<br>Plymouth County Superior Court - Brockton<br>72 Belmont Street<br>Brockton, MA 02301 |

You are hereby notified that on 11/17/2016 the following entry was made on the above referenced docket:

Endorsement on Motion for Preliminary Injunction (#3.0): Other action taken
The plaintiff has not shown that he has a likelihood of success on the merits. The request for preliminary injunction is denied. Dated 11/15/2016. Entered and copies mailed 11/17/2016

| DATE ISSUED | ASSOCIATE JUSTICE/ ASSISTANT CLERK | SESSION PHONE# |
|---|---|---|
| 11/18/2016 | Hon. Richard J Chin | (508)583-8250 |

Date/Time Printed: 11-18-2016 16:05:20

SCV016_X1\ 08/2014

# Exhibit B

**Please Note:**

**The Documents Appended Hereto Have Been Redacted**
**To Prevent Any Possible Disclosure of Personal And Private Information**

**Any Documents Marked As A True And Correct Copy**
**Have Also Been Redacted For This Purpose**

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT District of Massachusetts | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor: Lawrence C. Ray II | Case Number: 14-11238 | |
| NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.* | | |
| Name of Creditor (the person or other entity to whom the debtor owes money or property): Santander Bank, N. A. | | COURT USE ONLY |
| Name and address where notices should be sent: Santander Bank, N. A. MC: 10-6438-FB7 601 Penn Street, Reading, PA 19601 Telephone number: (610) 378-6312 email: DeftBkr@santander.us | | ☐ Check this box if this claim amends a previously filed claim. **Court Claim Number:**____ *(If known)* Filed on:____ |
| Name and address where payment should be sent (if different from above): Same as above Telephone number: email: | | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:** $ 111,998.26

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Mortgage/ Note
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as: | 3b. Uniform Claim Identifier (optional): |
|---|---|---|
| 7 0 4 1 | (See instruction #3a) | (See instruction #3b) |

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑ Real Estate ☐ Motor Vehicle ☐ Other
**Describe:** 95 Flames Road, Marshfield, MA 02050

**Value of Property:** $____

**Annual Interest Rate** 2.875% ☐ Fixed or ☑ Variable
**(when case was filed)**

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:** $ 39,761.15

**Basis for perfection:** ____

**Amount of Secured Claim:** $ 111,998.26

**Amount Unsecured:** $____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**
$____

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

7. **Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

8. **Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor. ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.) ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Michele Green
Title: Bankruptcy Administrator
Company: Santander Bank, N. A.
Address and telephone number (if different from notice address above):
MC: 10-6438-FB7
601 Penn Street, Reading, Pa 19601

(Signature) Michele Green (Date) 04/09/2014

Telephone number: (610) 378-6312 email: DeflBkr@santander.us

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

## Mortgage Proof of Claim Attachment

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.** See Bankruptcy Rule 3001(c)(2).

Name of debtor: Lawrence C. Ray II — Case number: 14-11238

Name of creditor: Santander Bank, N. A. — Last four digits of any number you use to identify the debtor's account: 7041

### Part 1: Statement of Principal and Interest Due as of the Petition Date

**Itemize the principal and interest due on the claim as of the petition date** (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

**1. Principal due** (1) $83721.52

**2. Interest due**

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 2.875 | 02/01/2012 | 01/01/2013 | $2160.47 |
| 3.000 | 01/01/2013 | 01/01/2014 | $2337.48 |
| 2.875 | 01/01/2014 | 03/24/2014 | $496.92 |
| Total interest due as of the petition date | | | $4994.87 |

Copy total here ▶ (2) + $4994.87

Escrow Advanced $17081.86

**3. Total principal and interest due** (3) $105798.25

### Part 2: Statement of Prepetition Fees, Expenses, and Charges

**Itemize the fees, expenses, and charges due on the claim as of the petition date** (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | | |
|---|---|---|
| 1. Late charges $16.79 each (11/1/11 - 1/1/12), $16.40 each (3/1/12 - 1/1/13) | $16.54 each (2/1/13 - 1/1/14), $16.41 each (2/1/14 - 3/1/14) | 462.07 |
| 2. Non-sufficient funds (NSF) fees | | |
| 3. Attorney's fees $800.00 - 9/10/12, $1000.00 - 3/6/13, $200.00 - 3/5/14 | | 2000.00 |
| 4. Filing fees and court costs | $378.00 - 9/10/12, $76.00 - 3/6/13, | 454.00 |
| 5. Advertisement costs $243.00 - 3/6/13, | $1296.00 ($432.00 ea: 3/5/14, 3/12/14, 3/19/14) | 1539.00 |
| 6. Sheriff/auctioneer fees | $46.50 - 9/10/12, $415.94 - 2/27/14 | 462.44 |
| 7. Title costs $330.00 - 9/10/12 | $135.00 - 5/31/13, $135.00 - 1/7/14, $75.00 - 2/26/14 | 675.00 |
| 8. Recording fees | 5/31/13 | 126.00 |
| 9. Appraisal/broker's price opinion fees | $100.77 each - 10/20/11, 6/4/13 | 201.54 |
| 10. Property inspection fees | See attached | 227.70 |
| 11. Tax advances (non-escrow) | | |
| 12. Insurance advances (non-escrow) | | |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | | 0.00 |
| 14. Property preservation expenses. Specify | | |
| 15. Other. Specify: Process Service | | |
| 16. Other. Specify: | Municipal Lien Certificate - 12/31/13 | 25.00 |
| 17. Other. Specify: | Mailings - 2/27/14 | 27.26 |
| 18. Total prepetition fees expenses | | 6200.01 |

**Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date**

**Does the installment payment amount include an escrow deposit?**

☐ No

☑ Yes Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

| | | | | |
|---|---|---|---|---|
| 1. **Installment payments due** | Date last payment received by creditor | 02/28/2012 (mm/dd/yyyy) | | |
| | Number of installment payments due | (1) 25 | | |
| 2. **Amount of installment payments due** | 3 installments @ $1371.46 | $ 4114.38 | | |
| | 8 installments @ $ 1335.85 | $ 10686.80 | | |
| | 12 installments @ $1340.64 | $ 16087.68 | | |
| | 2 installments @ $ 1336.14 | $ 2672.28 | | |
| | **Total installment payments due as of the petition date** | $ 33561.14 | Copy total here ► | (2) $ 33561.14 |
| 3. **Calculation of cure amount** | Add total prepetition fees, expenses, and charges | | Copy total from Part 2 here ► | + $6200.01 |
| | Subtract total of unapplied funds (funds received but not credited to account) | | | - $ 0.00 |
| | Subtract amounts for which debtor is entitled to a refund | | | - $ 0.00 |
| | Total amount necessary to cure default as of the petition date | | | (3) $ 39761.15 |

Your current monthly mortgage payment and any upcoming change are provide below

| Effective Date | Effective Amount |
|---|---|
| 04/01/2014 | 1241.84 |

Previous Current Next

# CUST/FEES - DETAIL

6174/05/20148:11:04 AM ETPFSP245 3 4 5 6

Account 7041 Namekey RAY LC095 Total Amort Fee Payment 0.00

Type 11 Description INSPECTION-COLLECTION Total Fee Type Receivable -227.70

| Assess Date | Fee Amt | Last Act | Remain Bal | AMORT FEE | PD-TO-DT | Exp Cd | Invoice # |
|---|---|---|---|---|---|---|---|
| 01/16/12 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 02/27/12 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 05/10/12 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 07/23/12 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 08/20/12 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 11/09/12 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 12/04/12 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 01/07/13 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 02/07/13 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 03/08/13 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 04/08/13 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 05/06/13 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 06/05/13 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 07/05/13 | -10.35 | 00/00/00 | -10.35 | | | 0 | |

Message: OK MORE...

Command: Submit Reset PrintAll

Previous Current Next

**CUST/FEES - DETAIL** 6174/05/20148:11:08 AM ETPFSP245 3 4 5 6

Account 7041 Namekey RAY LC095 Total Amort Fee Payment 0.00

Type 11 Description INSPECTION-COLLECTION Total Fee Type Receivable -227.70

| Assess Date | Fee Amt | Last Act | Remain Bal | AMORT FEE | PD-TO-DT | Exp Cd | Invoice # |
|---|---|---|---|---|---|---|---|
| 08/12/13 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 09/06/13 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 10/07/13 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 11/01/13 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 12/04/13 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 01/02/14 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 02/06/14 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| 03/07/14 | -10.35 | 00/00/00 | -10.35 | | | 0 | |
| | | | | | | 0 | |
| | | | | | | 0 | |
| | | | | | | 0 | |
| | | | | | | 0 | |
| | | | | | | 0 | |
| | | | | | | 0 | |

Message: OK BOTTOM

Command: Submit Reset PrintAll

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>Lawrence C. Ray, II | CHAPTER 13<br>CASE NO. 14-11238-WCH |

CERTIFICATE OF SERVICE

I, Rian K Vernon, Esquire, state that on May 22, 2014, I electronically filed the foregoing Proof of Claim with the United States Bankruptcy Court for the District of Massachusetts using the CM/ECF System. I served the foregoing document on the following CM/ECF participants:

John Fitzgerald, Esquire, Assistant U.S. Trustee
Carolyn Bankowski, Esquire, Chapter 13 Trustee
John C. Webster, Esquire for the Debtor

I certify that I have mailed by first class mail, postage prepaid, the documents electronically filed with the Court on the following non CM/ECF participants:

/s/ Rian K. Vernon
Rian K Vernon, Esquire
BBO# 662635

Lawrence C. Ray, II
PO Box 813
95 Flames Rd.
Marshfield, MA 02050-0813

LAWRENCE C RAY II
PO BOX 813
MARSHFIELD MA 02050-0813

YOUR LOAN NUMBER: [redacted]

DATE: 03/26/14

*** ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT - CORRECTION ***

PLEASE REVIEW THIS STATEMENT CLOSELY - YOUR MORTGAGE PAYMENT MAY BE AFFECTED. THIS STATEMENT TELLS YOU OF ANY CHANGES IN YOUR MORTGAGE PAYMENT, ANY SURPLUS REFUNDS, OR ANY SHORTAGE YOU MUST PAY. IT ALSO SHOWS YOU THE ANTICIPATED ESCROW ACTIVITY FOR YOUR ESCROW CYCLE BEGINNING 04/14 THROUGH 03/15.

----- ANTICIPATED PAYMENTS FROM ESCROW - 04/14 THROUGH 03/15 ------

| | |
|---|---|
| FORCED PLACE HO | 712.00 |
| MUNICIPAL TAX | 7625.40 |
| TOTAL PAYMENTS FROM ESCROW | 8337.40 |
| MONTHLY PAYMENT TO ESCROW | 694.78 (1/12TH OF ABOVE TOTAL) |

------- ANTICIPATED ESCROW ACTIVITY - 04/14 THROUGH 03/15--------

| -ANTICIPATED PAYMENTS- | | | | -- ESCROW BALANCE COMPARISON -- | | |
|---|---|---|---|---|---|---|
| MONTH | TO ESCROW | FROM ESCROW | DESCRIPTION | ANTICIPATED | | REQUIRED |
| | | | ACTUAL STARTING BALANCE | 2751.97 | | 2119.14 |
| APR 14 | 694.78 | 712.00 | FORCED PLACE HO | 2734.75 | | 2101.92 |
| MAY 14 | 694.78 | 2101.92 | MUNICIPAL TA ALP | 1327.61 | RLP | 694.78 |
| JUN 14 | 694.78 | | | 2022.39 | | 1389.56 |
| JUL 14 | 694.78 | | | 2717.17 | | 2084.34 |
| AUG 14 | 694.78 | 1710.78 | MUNICIPAL TAX | 1701.17 | | 1068.34 |
| SEP 14 | 694.78 | | | 2395.95 | | 1763.12 |
| OCT 14 | 694.78 | | | 3090.73 | | 2457.90 |
| NOV 14 | 694.78 | 1710.78 | MUNICIPAL TAX | 2074.73 | | 1441.90 |
| DEC 14 | 694.78 | | | 2769.51 | | 2136.68 |
| JAN 15 | 694.78 | | | 3464.29 | | 2831.46 |
| FEB 15 | 694.78 | 2101.92 | MUNICIPAL TAX | 2057.15 | | 1424.32 |
| MAR 15 | 694.78 | | | 2751.93 | | 2119.10 |

---------- DETERMINING THE SUFFICIENCY OF YOUR ESCROW BALANCE ----------

IF THE ANTICIPATED LOW POINT BALANCE (ALP) IS LESS THAN THE REQUIRED BALANCE (RLP), THEN YOU HAVE AN ESCROW SHORTAGE. YOUR ESCROW SHORTAGE IS 0.00.

IF THE ANTICIPATED LOW POINT BALANCE (ALP) IS GREATER THAN THE REQUIRED BALANCE (RLP), THEN YOU HAVE AN ESCROW SURPLUS. YOUR SURPLUS IS 632.83.

---------------- CALCULATION OF YOUR NEW PAYMENT AMOUNT ----------------

| | |
|---|---|
| PRINCIPAL & INTEREST | 547.06 * |
| ESCROW (1/12TH OF ANNUAL ANTICIPATED DISBURSEMENTS AS COMPUTED ABOVE) | 694.78 |
| PLUS: OPTIONAL INSURANCE PREMIUMS | 0.00 |
| PLUS: REPLACEMENT RESERVE OR FHA SVC CHG | 0.00 |
| PLUS: SHORTAGE PAYMENT | 0.00 |
| MINUS: SURPLUS CREDIT | 0.00 |
| ROUNDING ADJUSTMENT | 0.00 |
| MINUS: BUYDOWN/ASSISTANCE PAYMENTS | 0.00 |

BORROWER PAYMENT STARTING WITH THE PAYMENT DUE 04/01/14 1241.84

* IF YOUR LOAN IS AN ADJUSTABLE RATE MORTGAGE, THE PRINCIPAL & INTEREST PORTION OF YOUR PAYMENT MAY CHANGE WITHIN THIS CYCLE IN ACCORDANCE WITH YOUR LOAN DOCUMENTS.

NOTE: YOUR ESCROW BALANCE MAY CONTAIN A CUSHION. A CUSHION IS AN AMOUNT OF MONEY HELD IN YOUR ESCROW ACCOUNT TO PREVENT YOUR ESCROW BALANCE FROM BEING OVERDRAWN WHEN INCREASES IN THE DISBURSEMENTS OCCUR. FEDERAL LAW AUTHORIZES A MAXIMUM ESCROW CUSHION NOT TO EXCEED 1/6TH OF THE TOTAL ANNUAL ANTICIPATED ESCROW DISBURSEMENTS MADE DURING THE ABOVE CYCLE. THIS AMOUNT IS 1389.56. YOUR LOAN DOCUMENTS OR STATE LAW MAY REQUIRE A LESSER CUSHION. WHEN YOUR ESCROW BALANCE REACHES ITS LOWEST POINT DURING THE ABOVE CYCLE, THAT BALANCE IS TARGETED TO BE YOUR CUSHION AMOUNT. YOUR ESCROW CUSHION FOR THIS CYCLE IS 694.78.

YOUR ANTICIPATED ESCROW BALANCE CONSISTS OF THE FOLLOWING DETAIL (AN * NEXT TO AN AMOUNT INDICATES THIS IS A TOTAL THAT REPRESENTS MORE THAN ONE PAYMENT TO OR DISBURSEMENT FROM ESCROW):

ESCROW PAYMENTS UP TO ESCROW ANALYSIS EFFECTIVE DATE:

| | | | | | |
|---|---|---|---|---|---|
| 03/12 | 824.69 | 04/12 | 824.69 | 05/12 | 18184.45 * |

ESCROW DISBURSEMENTS UP TO ESCROW ANALYSIS EFFECTIVE DATE:

| | | | |
|---|---|---|---|
| 00/00 | 0.00 | 00/00 | 0.00 |
| 00/00 | 0.00 | 00/00 | 0.00 |

LAWRENCE C RAY II
PO BOX 813
MARSHFIELD MA 02050-0813

YOUR LOAN NUMBER: [redacted]

DATE: 03/26/14

* ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT-LAST CYCLE ACCOUNT HISTORY *

THIS HISTORY STATEMENT COMPARES YOUR PRIOR ANALYSIS CYCLE PROJECTED ESCROW ACTIVITY TO THE ACTUAL ESCROW ACTIVITY BEGINNING JUN, 2012 AND ENDING MAY,2013. IF YOUR LOAN WAS PAID-OFF, ASSUMED OR TRANSFERRED DURING THIS PRIOR CYCLE, OR THE COMPUTATION YEAR IS BEING CHANGED, ACTUAL ACTIVITY STOPS AT THAT POINT.
THIS STATEMENT IS INFORMATIONAL ONLY AND REQUIRES NO ACTION ON YOUR PART.

--- YOUR PAYMENT BREAKDOWN AS OF JUN, 2012 IS ---

| | |
|---|---|
| PRINCIPAL & INTEREST | 546.77 |
| ESCROW DEPOSIT | 605.59 |
| OPTIONAL INSURANCE | 0.00 |
| REPLACE RESV/FHA SVC CHG | 0.00 |
| SHORTAGE | 183.49 |
| DEFICIENCY | 0.00 |
| SURPLUS | 0.00 |
| ROUNDING | 0.00 |
| LESS BUYDOWN/ASST PAYMENT | 0.00 |
| BORROWER PAYMENT | 1335.85 |

| | PAYMENTS TO ESCROW | | PAYMENTS FROM ESCROW | | | ESCROW BALANCE | |
|---|---|---|---|---|---|---|---|
| MONTH | PRIOR PRJ | ACTUAL | PRIOR PRJ | ACTUAL | DESCRIPTION | PRIOR PRJ | ACTUAL |
| JUN 12 | 605.59 | * | | | | 1211.28 | - 3225.20 |
| JUL 12 | 605.59 | * | | 1605.52* | MUNICI | 1816.87 | - 4830.72 |
| AUG 12 | 605.59 | * | 1605.52 | 712.30* | FORCED | 816.94 | - 5543.02 |
| SEP 12 | 605.59 | * | | | | 1422.53 | - 5543.02 |
| OCT 12 | 605.59 | * | | 1605.52* | MUNICI | 2028.12 | - 7148.54 |
| NOV 12 | 605.59 | * | 1605.52 | * | | 1028.19 | - 7148.54 |
| DEC 12 | 605.59 | * | | | | 1633.78 | - 7148.54 |
| JAN 13 | 605.59 | | | 1644.75 | MUNICI | | |
| JAN 13 | | * | | 408.35* | MUNICI | 2239.37 | - 9201.64 |
| FEB 13 | 605.59 | * | 1605.52 | * | | 1239.44 | - 9201.64 |

MAR 13 605.59 * 1845.03 -
9201.64
APR 13 605.59 * 845.10 1644.74* MUNICI 1605.52 -
10846.38 A
MAY 13 605.59 * 1605.52 * 605.59 T -
10846.38

UNDER FEDERAL LAW, WHEN YOUR ACTUAL ESCROW BALANCE REACHED THE LOWEST POINT, THAT BALANCE WAS TARGETED NOT TO EXCEED 1/6TH OF THE ANNUAL PROJECTED DISBURSEMENTS. YOUR LOAN DOCUMENTS OR STATE LAW MAY SPECIFY THAT YOUR LOWEST BALANCE MUST BE A LOWER AMOUNT THAN THE FEDERAL LAW ALLOWS.

UNDER YOUR MORTGAGE CONTRACT OR STATE OR FEDERAL LAW, YOUR TARGETED LOW POINT BALANCE (T) WAS 605.59. YOUR ACTUAL LOW POINT ESCROW BALANCE (A) WAS -10846.38.

BY COMPARING THE ANTICIPATED ESCROW TRANSACTIONS WITH THE ACTUAL TRANSACTIONS YOU CAN DETERMINE WHERE A DIFFERENCE MAY HAVE OCCURRED. AN ASTERISK (*) INDICATES A DIFFERENCE IN EITHER THE AMOUNT OR DATE OF THE PROJECTED ACTIVITY AND THE ACTUAL ACTIVITY. A DOUBLE ASTERISK (**) INDICATES PROJECTED ACTIVITY THAT HAS NOT YET OCCURRED DUE TO THE DATE OF THIS STATEMENT.

IF THERE ARE NO PRIOR PAYMENTS TO OR FROM ESCROW SHOWN, THERE WAS NO PRIOR PROJECTION TO WHICH THE ACTUAL ACTIVITY COULD BE COMPARED.

YOUR ANTICIPATED ESCROW BALANCE CONSISTS OF THE FOLLOWING DETAIL (AN * NEXT TO AN AMOUNT INDICATES THIS IS A TOTAL THAT REPRESENTS MORE THAN ONE PAYMENT TO OR DISBURSEMENT FROM ESCROW):
ESCROW PAYMENTS UP TO ESCROW ANALYSIS EFFECTIVE DATE:
03/12 824.69 04/12 824.69 05/12 824.69
ESCROW DISBURSEMENTS UP TO ESCROW ANALYSIS EFFECTIVE DATE:
04/12 845.10 FORCED PLACE HOME 00/00 0.00
00/00 0.00 00/00 0.00
00/00 0.00 00/00 0.00

# Exhibit A

BK 15724 PG 233

Received & Recorded
PLYMOUTH COUNTY
REGISTRY OF DEEDS
12 DEC 1997 03:50PM
JOHN D. RIORDAN
REGISTER
BK 15724 PG

[redacted]

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on December 12, 1997. The mortgagor is Lawrence C. Ray, II ("Borrower"). This Security Instrument is given to THE COMPASS BANK FOR SAVINGS which is organized and existing under the laws of The Commonwealth of Massachusetts, and whose address is 791 Purchase Street, New Bedford, Massachusetts 02740 ("Lender"). Borrower owes Lender the principal sum of ONE HUNDRED EIGHTEEN THOUSAND AND 00/100 Dollars (U.S. $ 118,000.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on January 1, 2028. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in Plymouth County, Massachusetts: Marshfield

SEE EXHIBIT A ATTACHED HERETO AND A PART HEREOF.

which has the address of 95 Flames Road [Street] Marshfield [City]
Massachusetts 02050 [Zip Code] ("Property Address");

BK15724PG234

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the

BK 15724 PG 235

periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any



GREATLAND
To Order Call 1-800-530-9393 ☐ Fax 616-791-1131

BK 15724 PG 236

condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as

BK15724PG237

applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

BK 15724 PG 238

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

[XX] Adjustable Rate Rider [ ] Condominium Rider [ ] 1-4 Family Rider
[ ] Graduated Payment Rider [ ] Planned Unit Development Rider [ ] Biweekly Payment Rider
[ ] Balloon Rider [ ] Rate Improvement Rider [ ] Second Home Rider
[X] Other(s) [specify]
See Exhibit A attached hereto.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_______________ (Seal)
Lawrence C. Ray, II -Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
Borrower

_______________ (Seal)
-Borrower

COMMONWEALTH OF MASSACHUSETTS, PLYMOUTH County ss:

On this 12th day of December, 1997, before me personally appeared
Lawrence C. Ray, II, and
acknowledged the foregoing to be his free act and deed.

My Commission expires:
7/10/03

_______________
Robert E. Galvin Notary Public

BK15724PG239

**EXHIBIT A**

A certain parcel of land situate in Marshfield, Plymouth County, Massachusetts being shown as Lot 32B on a plan entitled, "PLAN OF LAND 95 FLAMES ROAD, MARSHFIELD, MA., DRAWN FOR: LAWRENCE RAY, MILLBROOK SURVEY, 10 ENTERPRISE STREET, DUXBURY, MA 02332, SCALE: 1" = 40', NOVEMBER 27, 1996" which plan is recorded with Plymouth County Registry of Deeds as Plan No. 829 of 1996, in Plan Book 39, Page 620.

Said Lot 32B contains 1.21 acres according to said plan.

Being the remaining portion of the premises contained in Deed dated April 5, 1983 and recorded with Plymouth County Registry of Deeds in Book 5326, Page 347.

BK15724PG240

# ADJUSTABLE RATE RIDER
### (1 Year Treasury Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 12th day of DECEMBER 1997, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

COMPASS BANK FOR SAVINGS

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

95 FLAMES RD, MARSHFIELD, MASSACHUSETTS 02050

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 6.875 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of JANUARY, 2003, and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND THREE QUARTERS percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

BK15724PG241

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.875 % or less than 4.875 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than 12.875 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Adjustable Rate Rider.

Lawrence C Ray II (Seal) -Borrower
LAWRENCE C RAY II

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

*[Sign Original Only]*

Form 3111 3/85

GREATLAND
To Order Call: 1-800-530-9393 ☐ Fax 616-791-1131

ITEM 2064L2 (9612)

*(Page 2 of 2 pages)*

← END OF INSTRUMENT →

# ADJUSTABLE RATE NOTE

**(1 Year Treasury Index – Rate Caps)**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| | | |
|---|---|---|
| DECEMBER 12, 1997 | MARSHFIELD | MASSACHUSETTS |
| [Date] | [City] | [State] |

95 FLAMES RD, MARSHFIELD, MASSACHUSETTS 02050

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 118,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

COMPASS BANK FOR SAVINGS PLYMOUTH, MA

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.875 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on FEBRUARY 1, 1998. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on JANUARY 1, 2028 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at

791 PURCHASE STREET, NEW BEDFORD, MA 02740

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 775.18. This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.



[redacted]

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of JANUARY, 2003 and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND THREE QUARTERS percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.875 % or less than 4.875 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than 12.875 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 4 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Lawrence C Ray II _____(Seal) -Borrower
LAWRENCE C RAY II

_____(Seal) -Borrower

_____(Seal) -Borrower

_____(Seal) -Borrower

_____(Seal) -Borrower

_____(Seal) -Borrower

*[Sign Original Only]*

WITNESS:

_____
Robert E. Galvin

Form 3502 3/85
GREATLAND
To Order Call: 1-800-530-9393 Fax 616-791-1131

ITEM 2063L4 (9511)

BK15724PG240

# ADJUSTABLE RATE RIDER

**(1 Year Treasury Index - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 12th day of DECEMBER 1997, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

COMPASS BANK FOR SAVINGS

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

95 FLAMES RD, MARSHFIELD, MASSACHUSETTS 02050

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 6.875 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of JANUARY, 2003, and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding

TWO AND THREE QUARTERS

percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

BK15724PG241

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.875 % or less than 4.875 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than 12.875 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Adjustable Rate Rider.

Lawrence C Ray II (Seal) -Borrower
LAWRENCE C RAY II

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

*[Sign Original Only]*

Form 3111 3/85

GREATLAND
To Order Call: 1-800-530-9393 Fax 616-791-1131

ITEM 2064L2 (9612)



END OF INSTRUMENT

# ADJUSTABLE RATE NOTE

**(1 Year Treasury Index – Rate Caps)**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| | | |
|---|---|---|
| DECEMBER 12, 1997 | MARSHFIELD | MASSACHUSETTS |
| [Date] | [City] | [State] |

95 FLAMES RD, MARSHFIELD, MASSACHUSETTS 02050

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 118,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

COMPASS BANK FOR SAVINGS PLYMOUTH, MA

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.875 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on FEBRUARY 1, 1998. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on JANUARY 1, 2028 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at

791 PURCHASE STREET, NEW BEDFORD, MA 02740

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 775.18 . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.



[redacted]

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of JANUARY, 2003 and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND THREE QUARTERS percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.875 % or less than 4.875 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than 12.875 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 4 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Lawrence C Ray II _______ (Seal) -Borrower    _______ (Seal) -Borrower
LAWRENCE C RAY II

_______ (Seal) -Borrower    _______ (Seal) -Borrower

_______ (Seal) -Borrower    _______ (Seal) -Borrower

*[Sign Original Only]*

WITNESS: _______
Robert E. Galvin